UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DETROIT RADIANT PRODUCTS
COMPANY,

        Plaintiff,

v.

BSH HOME APPLIANCES CORPORATION,

        Defendant.
                                        /

Case No. 04-72881

Honorable John Corbett O'Meara

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The case involves the sale of infra-red burners for use in Thermador ovens. Plaintiff Detroit Radiant Products Company ("Detroit Radiant") manufactured the burners for defendant BSH Home Appliance Corporation ("BSH") and claimed that BSH breached its contract by failing to purchase the required number of burners. A bench trial was heard November 1 through 3, 2005; and the parties submitted proposed findings of fact and conclusions of law November 22, 2005. At the court's request, Plaintiff filed revised, proposed findings of fact and conclusions of law January 17, 2006. Defendant then asked for an opportunity to file objections to the those revisions; however, Defendant informed the court February 1, 2006, that it had no objections.

### **FINDINGS OF FACT**

1. BSH initially requested a price quote for the burners from Detroit Radiant on July 5, 2001.

2. Detroit Radiant provided its first pricing quote, based on a range of quantities, July 10, 2001.

3. Price negotiating followed for a month, and Detroit Radiant continued to lower the price based on the understanding that BSH would buy at least 30,000 units.

4. Detroit Radiant agreed to absorb the tooling cost based on the understanding that BSH would buy at least 30,000 units.

5. Detroit Radiant would not have agreed to the deal at only 15,000 total units and would not have absorbed the cost of tooling and research and development at volumes lower than 30,000.

6. While the parties adjusted the annual volume amount, the basic premise of the business deal was always based on the total purchase of at least 30,000 units.

7. The August 10, 2001 purchase order, the first purchase order, committed BSH to purchase 15,000 units.

8. The January 8, 2003 purchase order, the second purchase order, committed BSH to purchase 16,000 units.

9. The 31,000 total number of units identified by the two purchase orders is consistent with and supports the finding that BSH would buy at least 30,000 units.

10. BSH has argued that the quantity terms in the two purchase orders were estimates or forecasts and that BSH could purchase as few or as many units as it desired. The court rejects this argument.

11. The second purchase order did not replace the first purchase order; rather, the two purchase orders were additive, which is consistent with the agreement that BSH would purchase at least 30,000 units.

12. The draft, unsigned Supplier Agreement does not govern the terms of the agreement between the parties.

13. Although BSH argued at trial that the first purchase order had conditions precedent that were never met, any such conditions were waived. Despite the provision stating that the first 272 pieces were due by September 5, 2001, and that the balance of the purchase order would be pending contract approval, BSH released Detroit Radiant for nearly 6,000 units as early as October 29, 2001.

14. BSH intended that Detroit Radiant would be the exclusive supplier of the burner.

15. BSH never complained about the quality of the burner made by Detroit Radiant.

16. BSH still requires this burner and is now purchasing the same burner from a different supplier.

17. Detroit Radiant shipped 12,886 units to BSH between 2001 and 2004.

18. BSH failed to take delivery and pay for 18,114 of the 31,000 ordered.

19. BSH has purchased over 7,600 units from its subsequent supplier.

20. The burners at issue were specially manufactured by Detroit Radiant for BSH.

21. Detroit Radiant's mitigation opportunities are limited because the burners were specially manufactured goods. In addition, there is no readily ascertainable market for the burners, and many of the components are not marketable. Moreover, BSH told Detroit Radiant that it cannot re-sell the burner to anyone other than BSH.

22. Detroit Radiant's net revenue before inventory reimbursement for 18,114 burners would have been $511,720.00, minus material and labor costs amounting to $199,616.00, for a total of $312,104.00.

23. Detroit Radiant incurred $52,011.00 in damages for its unused inventory.

24. The unused inventory amount is additive. The lost profits analysis does not include the full revenue that Detroit Radiant would have made had the contract been fulfilled because it did not include unused inventory, the cost of which was not figured into the price BSH paid for the burners.

25. When adjusted to present value and interest is added, Detroit Radiant's lost profits are $418,261.00.

26. Insofar as the Conclusions of Law below are dependant upon facts, the court finds facts consistent with those conclusions.

## CONCLUSIONS OF LAW

1. In a diversity case, the court must apply the substantive law of the forum state. NILAC Intern. Mktg. Group v. Ameritech Servs, Inc., 363 F.3d 354, 358 (6th Cir. 2004).

2. Where, as here, there is no express choice-of-law provision to apply, Michigan courts apply the law of the forum state unless: 1) there is no substantial relationship between the forum state and the contract, or 2) the application of the forum state's law would conflict with a policy prerogative of a state with a greater interest in the contract than the forum state. Id.

3. Michigan does have a substantial relationship to this dispute because Detroit Radiant is a Michigan corporation and the goods at issue were manufactured in Michigan and delivered F.O.B. Michigan.

4. Michigan's version of Article 2 of the Uniform Commercial Code apples to this dispute because the subject goods were movable at the time of identification to the contract for sale.

5.  The August 10, 2001 Purchase Order and the January 8, 2003 Purchase Order required BSH to purchase 31,000 units of the burner at $28.25 per unit.

6.  No ambiguity exists as to the quantities in the two purchase orders, and nothing in them states or intimates that the quantity terms are forecasts or estimates.

7.  The draft, unsigned supplier agreement is not an enforceable contract and therefore does not govern the resolution of this dispute.

8.  The two purchase orders are not blanket orders that authorized BSH to purchase as many or as few units as it desired.

9.  BSH did not meet its burden in proving that the second purchase order simply replaced the first purchase order.

10. Where the goods in question in a breached sales contract were specialty items, the measure of damages is that provided for in Mich. Comp. Laws Ann. § 440.2708(2).

11. The relevant statute provides, "If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done, then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this article (section 2710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale."  Mich. Comp. Laws Ann. § 440.2708(2).

12. A plaintiff asserting a cause of action must prove its damages with reasonable certainty. Hoffman v. Auto Club Ass'n., 211 Mich. App. 55, 108 (1995).

13. Detroit Radiant has proven its damages with reasonable certainty.

14. Detroit Radiant is entitled to its lost profits for the specially manufactured goods and its unused inventory, plus and adjustment for present value and interest.

15. Detroit Radiant mitigated its damages to the extent possible.

16. When adjusted to present value and interest is added to Detroit Radiant's lost profits and unused inventory, Detroit Radiant has proven damages of $418,261.00.

## **ORDER**

It is hereby **ORDERED** that judgment will be **ENTERED** for plaintiff Detroit Radiant and against BSH for the sum of $418,261.00.

        s/John Corbett O'Meara
        John Corbett O'Meara
        United States District Judge

Dated: March 1, 2006